**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 28, 2019**

# In the Court of Appeals of Georgia

A19A1056. BUTLER v. THE STATE.

BARNES, Presiding Judge.

Charged with multiple sexual offenses, Darryl Pernell Butler was found guilty of some counts, and not guilty of others. In this appeal, Butler contends that the evidence was insufficient to support a particular child molestation conviction. We agree, and reverse that conviction. The judgment of conviction is otherwise affirmed.

The underlying indictment charged Butler with committing against his minor stepdaughter, S. W., nine sexual offenses – one count each of incest, child molestation, and statutory rape, alleged to have occurred during three discrete time periods. In particular, Count Nos. 1 - 3 alleged that Butler committed the three offenses between February 15, 2015 and March 1, 2015. Count Nos. 4 - 6 accused Butler of committing the three offenses between April 15, 2015 and April 20, 2015.

And Count Nos. 7 - 9 charged Butler with committing the three offenses between April 20, 2015 and April 21, 2015. During opening statements at the jury trial, the prosecutor explained the State's prosecution of Butler: "Basically in a nutshell the State is alleging that he had sexual conduct with [S. W.] three different times. So it's not nine times. It's three." The jury returned not guilty verdicts on all counts, except Count Nos. 7 - 9 (incest, child molestation, and statutory rape, respectively), which were alleged to have occurred between April 20, 2015 and April 21, 2015.

This appeal concerns whether the evidence was sufficient as to the child molestation charged in Count No. 8. Where, as here, an appellant challenges the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the evidence showed the following. Butler was born in 1968, and married S. W.'s mother in 2009. In 2015, the year in question, the three of them were living together in Mitchell County. On April 21 of that year, S. W.'s mother found

2

sexually graphic text messages on S. W.'s cell phone.[1] That same day, S. W.'s mother took then 14-year-old S. W. and her cell phone to the police department, and a police investigator interviewed S. W. Also, that same day, April 21, a nurse conducted a sexual assault examination upon S. W. As the investigation proceeded, the investigator interviewed S. W. two additional times; and a forensic biologist at the GBI crime lab ultimately determined that vaginal and cervical swabs from S. W.'s sexual assault examination contained Butler's DNA (collected from buccal swabs, obtained upon execution of a search warrant of Butler's bodily fluids). Trial evidence also showed that Butler had taken S. W. to Florida on April 20, 2015, and that S. W.'s mother did not go with them.

We turn to Butler's specific challenge whether the evidence was sufficient to sustain his child molestation conviction. Pursuant to OCGA § 16-6-4 (a) (1), "[a] person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the

---

[1] The State did not contend, nor did the evidence show, that any such text messages were sent either from or to Butler.

3

person." And the child molestation count at issue in this appeal, Count No. 8, pertinently alleged that Butler,

> *between the 20th day of April, 2015, and the 21st day of April 2015*, the exact date of the offense being unknown to the Grand Jury, in Mitchell County, Georgia, did commit an immoral and indecent act to [S. W.], a child under the age of 16 years, with the intent to arouse and satisfy the sexual desires of himself *by using his hands to grab victim's buttocks and by using his hands to rub said victim's vagina and buttocks*.[2]

Butler argues that the State failed to prove the "immoral and indecent act" as alleged (and as emphasized above). Butler asserts further that when S. W. was called to the stand, "[she] specifically indicated that her encounter with [him] on April 20, 2015, which apparently forms the basis of Count 8, did *not* involve use of [his] hands."[3]

S. W. was sixteen years old at Butler's 2017 trial, and testified on direct examination about two sexual episodes with Butler.

> Q: Did you back in April of 2015, did you have a relationship with [the man sending and receiving the graphic text messages] and also [Butler]?
> A: Yes, sir.
> Q: And was that a sexual relationship?
> A: Yes, sir.

---

[2] (Emphasis supplied.)

[3] (Emphasis in source.)

Q: How many times did you have sex with . . . Butler?
A: Two.

S. W. recounted that the first episode with Butler occurred at their home "between February and March, like after Valentine's Day kind of." S. W. recounted that the second episode had occurred in Butler's car when the two of them traveled to Florida. S. W. was able to identify the date of the second episode, recalling at trial that on the day following that sexual incident, she underwent a sexual assault examination by a nurse. Focusing on that sexual episode with Butler, the prosecutor asked S. W.:

Q: Okay. What kind of relations did you have with . . . Butler the day before [you underwent the sexual assault examination]?
A: Sexual relations.
Q: Did – was it with his hand or with his penis or what?
A: His penis.

The prosecutor went on to elicit these details:

Q: And when you and Darryl had sex, did he ejaculate?
A: Yes, sir.
. . .
Q: [S. W.], you said that he inserted his penis into you?
A: Yes, sir.
Q: Did he ever insert his fingers?
A: No, sir.

5

Q: I know this is kind of gross, too. Did he ever lick your vagina?

A: Yes, sir.

Q: When did he lick your vagina?

A: When --

Q: Was it that first time or the second time?

A: The first time.

Q: Did he lick your vagina the second time on the 20th?

A: No, sir.

Q: That was just penis sex?

A: Yes.

The record thus establishes merit in Butler's claim that nothing in S. W.'s testimony authorized the jury to find him guilty of the child molestation as alleged in Count No. 8. The State urges that this Court nevertheless affirm that conviction, advancing two arguments. First, the State asserts that it proved that Butler used his hands to molest S. W. as alleged in Count No. 8 through testimony given by the police investigator. The portion of the transcript cited by the State, however, does not support that assertion. The State cites that toward the end of the investigator's testimony, the prosecutor directed the investigator's attention to the indictment and asked, "What are the allegations in each one of the counts and what are they related to as far as the dates?" The investigator responded: "Okay. Count 1 for incest." Thereupon, the prosecutor questioned the investigator, stepping through each of the

nine counts *seriatim*. Accordingly, after questioning the investigator as to Count No. 1, the prosecutor moved on:

> Q: Now, the child molestation is in Count 3 or 2?
> A: Two.
> Q: Count 2. What does that specifically allege that [S. W.] told you about?
> A: The child molestation is because he was – she told me that he would grab her butt and he would fondle her genitals.
> Q: And statutory rape is obviously sex?
> A: Correct.
> Q: Let's talk about 4, 5, and 6. What were the dates on those particular offenses?
> . . .

After examining the investigator about those counts, the prosecutor turned to the remaining counts:

> Q: Now let's look at 7, 8, and 9.
> A: Yes, sir.
> Q: What dates are alleged in those offenses?
> A: The date there was between the 20th day of April, 2015, and the 21st day of April, 2015.
> Q: And was that based on the DNA results, his testimony as to what happened in her and the ejaculation --
> A: Correct.
> Q: And her testimony also that they had sex?

A: Correct.

The prosecutor ended that line of inquiry at that point.

Hence, the transcript shows that the investigator's testimony as to Butler's use of his hands related to a *separate* count of child molestation, Count No. 2 – which count was alleged to have occurred between February 15, 2015 and March 1, 2015,[4] and which count the jury found Butler not guilty. The transcript confirms that when the prosecutor turned to Count No. 8, he elicited no testimony from the investigator as to the evidentiary basis for that alleged child molestation count. Furthermore, while the transcript shows that the three police investigator's interviews of S. W. were

_____

[4] As noted above, when delivering the State's opening statement, the prosecutor explained the prosecution of Butler: "[T]he State is alleging that he had sexual conduct with [S. W.] three different times." Notably, when delivering the State's closing argument, the prosecutor reiterated that "on the indictment you have nine charges, but . . . charges 1 through 3 are all basically in correlation with each other, charges 4 through 6 are all in correlation with each other, and 7 through 9." See *Byrd v. State*, 344 Ga. App. 780, 788 (3) (811 SE2d 85) (2018) (reiterating that "when the averments of each count refer to a different period of time, each period of time is made an essential averment of the transaction, and each count of the indictment is distinguishable and may be punished separately"). See generally *Berger v. United States*, 295 U.S. 78, 82 (55 SCt 629, 79 LEd 1314) (1935) ("The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense."), cited in *Byers v. State*, 236 Ga. 599, 600 (1) (225 SE2d 26) (1976).

8

recorded, no such recording was presented to the jury. Notably, at one point during the presentment of evidence, the court specifically asked the lawyers whether any recording of S. W.'s interviews would be presented to the jury; the prosecutor answered no.[5] Given the foregoing, the State's assertion is unavailing.

Second, the State posits that the jury was authorized to infer that "sex is commonly preceded by foreplay and conclude that [Butler] grabbed the victim's butt and fondle[d] her genitals on or about the 20th of April, 2015." We are not persuaded to affirm the contested conviction on that ground. On appeal from a criminal conviction, "[w]e do not engage in conjecture or speculation, and we do not consider possibilities or inferences based on conjecture or speculation." *McCrickard v. State*, 249 Ga. App. 715, 717 (1) (c) (549 SE2d 505) (2001). Moreover, it is well settled in Georgia that "averments in an indictment as to the specific manner in which a crime was committed are not mere surplusage, and such averments must be proved as laid, or the failure to prove the same will amount to a fatal variance and a violation of the defendant's right to due process of law." (Punctuation and footnote omitted) *Smith v. State*, 340 Ga. App. 457, 464 (2) (797 SE2d 679) (2017).

---

[5] Defense counsel played a portion of a video for purposes of refreshing S. W.'s memory, but the jury was excused from the courtroom while S. W. reviewed the recording.

Because the evidence fell short of authorizing any rational trier of fact to find beyond a reasonable doubt essential elements of the contested count of child molestation, Count No. 8, we must reverse that conviction. See *Jackson v. Virginia*, supra; *Espinosa v. State*, __ Ga. App. __, __ (1) (__ SE2d __) (Case No. A19A1391, decided August 21, 2019) (reversing child molestation count that alleged that the defendant touched vaginal area of the victim with his hand, where the victim testified that the defendant never actually did so, and where the transcript did not otherwise show that the defendant touched the child's vaginal area); *Woods v. State*, 244 Ga. App. 359, 360-361 (2) (535 SE2d 524) (2000) (reversing defendant's conviction of child molestation because there was no evidence that he fondled or touched the child's vagina, as alleged in the indictment); *Prophitt v. State*, 336 Ga. App. 262, 270-271 (784 SE2d 103) (2016) (reversing child molestation conviction, because a material allegation – "in the presence of [a child]" – was not supported by sufficient evidence) (physical precedent only).

*Judgment affirmed in part and reversed in part. Mercier and Brown, JJ., concur*.